IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JOSEPH R. CHAVEZ,**

      **Plaintiff,**

v.                                                                             No. CIV 20-0470 RB/KRS

**NEW MEXICO DEPARTMENT OF
CORRECTIONS,** *et al.***,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Chavez is an inmate in the custody of the New Mexico Corrections Department (NMCD). On June 28, 2018, Chavez was housed at the Lea County Correctional Facility (LCCF), which is operated by Defendant GEO Group, Inc. Chavez alleges that on that date, three officers with the Critical Emergency Response Team (CERT) entered his cell, used excessive force against him, and sexually assaulted him. He filed suit in state court against the officers and several other defendants, asserting both state and federal claims. Defendants removed the lawsuit to this Court. The Court now grants summary judgment to Defendants because Chavez failed to exhaust his administrative remedies.

**I.      Factual and Procedural History**

      **A.      The June 28, 2018 Incident**

At the time of the incident alleged in this Complaint, Chavez was an inmate at the LCCF in Hobbs, New Mexico. (Doc. 1-1 (Compl.) at 2.) LCCF is owned and operated by GEO Group, Inc. (Doc. 43 at 2.) Chavez alleges that he was in his cell on June 28, 2018, when armed CERT officers entered the cell to extract Chavez's roommate. (Compl. at 2.) The CERT officers then allegedly put Chavez in a choke hold, beat him, and digitally raped him. (*See id.*)

Defendants dispute Chavez's version of the incident and offer the Declaration of Brittni Buckelew, Chief of Security for GEO Secure Services at LCCF. (Doc. 43-1.) Buckelew states that CERT officers conducted a shakedown of Chavez's cell on June 28, 2018. (*See id.* ¶¶ 1–2, 6.) She states that Defendant "Mendoza was part of the CERT[,]" but Defendant Martinez was not involved. (*Id.* ¶ 6.) CERT officers found contraband in Chavez's bunk, and Chavez was later found guilty of disciplinary infractions. (*Id.* ¶ 7; *see also* Doc. 43-1-A.)

### B.   The NMCD Grievance Policy

NMCD policy defines a grievance as "a written complaint by an inmate . . . or by a constituent on an inmate's behalf regarding a policy applicable within an institution, a condition in an institution, or an incident occurring within an institution." (Docs. 43-2 ¶ 4; 43-2-A at 6.[1]) Inmates may submit a grievance about "[a]ny[2] . . . matter relating to conditions of care or supervision within the authority of the [NMCD] or its contractors," including any matters under the Prison Rape and Elimination Act (PREA) such as sexual abuse or sexual harassment. (Docs. 43-2 ¶ 5; 43-2-A at 7.) The policy defines exhaustion of administrative remedies as "[t]he completion of the grievance process through the Department-level appeal." (Doc. 43-2-A at 6.)

"The grievance procedure consists of three steps." (Doc. 43-2 ¶ 7.) At Step 1, "the inmate must submit an Informal Complaint within five working days of the incident about which the inmate wishes to complain." (*Id.* (citing Doc. 43-2-B at 8).) For instances of sexual abuse or harassment by staff, inmates may immediately initiate a Formal Grievance described at Step 2. (*See id.* (citing Doc. 43-2-B at 8 ("The agency shall not require an inmate to use any informal

---

[1] The Court cites the CM/ECF pagination for Docs. 43-1 and 43-2, rather than the internal pagination of Docs. 43-1-B, 43-2-A, and 43-2-B.

[2] There are matters deemed "not grievable," but they are irrelevant to this motion. (*See* Doc. 43-2-A at 7.)

grievance process . . . [for] an alleged incident of sexual abuse or sexual harassment.")).) "Informal Complaints are logged in and forwarded to the Unit Manager, Chief of Security[,] or LCCF's designee in charge of resolution of Informal Complaints," who "must then respond to the Informal Complaint within five . . . days of receipt." (*Id.* ¶ 8 (citing Doc. 43-2-B at 8)).) At Step 2, an inmate who is not satisfied with resolution of the Informal Complaint must "file a Formal Grievance within five . . . working days after receiving a response to the Informal Complaint." (*Id.* ¶ 9 (citing Doc. 43-2-B at 8).) Moriama Valeriano, the Grievance Coordinator at LCCF, reviews all Formal Grievances to ensure that they comply with time limits and contain necessary information. (*Id.* ¶¶ 1, 9; *see also* Doc. 43-2-B at 10.) Valeriano also investigates each "Formal Grievance and issue[s] a report and recommendation on the grievance to the Warden or the Warden's designee . . . ." (Doc. 43-2 ¶ 9 (citing Doc. 43-2-B at 11).) At Step 3, if the inmate is dissatisfied with the decision on the Formal Grievance, the inmate must "submit an appeal to the Secretary of Corrections within five . . . working days of receiving the decision . . . ." (*Id.* ¶ 10 (citing Doc. 43-2-B at 12).) The Secretary, Director of Adult Prisons, or a designee then makes a final decision on the grievance. (*Id.* (citing Doc. 43-2-B at 12).)

    **C.**    **Chavez's Grievances Regarding the Incident**

Chavez filed two Informal Complaints regarding the June 28, 2018 incident. (*See id.* ¶ 11 (citing Doc. 43-2-C).) In the first, filed July 18, 2018, Chavez stated that officers removed property from his cell for search on June 28. (*See* Doc. 43-2-C at 13–14.) He further alleged that not all his property was returned. (*Id.* at 14.) On July 26, 2018, Chavez filed a second Informal Complaint regarding the same missing property. (*Id.* at 15–16.) Chavez made no allegations of excessive force or sexual assault. (*See* Doc. 43-2-C.) Valeriano states that both Informal Complaints were untimely. (Doc. 43-2 ¶ 12 (citing Doc. 43-2-C).) Chavez did not complete Step

2 by filing a Formal Grievance regarding the June 28, 2018 incident. (*See id.*) Valeriano asserts that Chavez was aware of the NMCD grievance policy and had used it prior to June 28, 2018, to submit both Informal Complaints and Formal Grievances. (*Id.* ¶ 13 (citing Doc. 43-2-D).)

"The only complaint about the June 28, 2018 incident alleging" sexual assault "was a March 25, 2019 report that was sent to the Governor of the State of New Mexico by a third-party . . . ." (Doc. 43-1 ¶ 8.) The Governor's Office forwarded the complaint to the NMCD Office of Professional Compliance, which treated it "as a PREA Complaint and delegated investigation of the PREA Complaint to the LCCF." (*Id.*) "LCCF staff investigated the PREA Complaint and found it to be unfounded" on January 23, 2020. (*Id.* ¶ 9 (citing Doc. 43-1-B); *see also* Doc. 43-1-B at 5.) Pursuant to the investigation, Chavez was interviewed on July 19, 2019, and reported that during the incident, CERT officers "dragged him off his bunk by his ankles[,] cuffed him while he was on the floor[,]" and escorted him out of the pod to the medical department. (Doc. 43-1-B at 6.) While he was escorted, "his pants and boxers slipped down exposing his buttocks and genitals." (*Id.*) "Chavez said he asked multiple times for the staff to allow him to pick up his pants and boxers, but they refused to let him." (*Id.*) He alleged that he was exposed for the remainder of the escort to medical. (*Id.*) "Chavez denied having been physically hurt by" any CERT members. (*Id.*) One of the officers involved who is not a defendant in this lawsuit was also interviewed and stated that "the entire incident was recorded . . . and at no time during the escort were . . . Chavez's buttocks or genitals exposed." (*Id.* at 7.) The report stated that video evidence confirmed Chavez was not exposed at any time during the escort. (*Id.*)

### D. Procedural History

Chavez, proceeding pro se, filed a lawsuit in a New Mexico state court, and Defendants GEO Group and Warden Dwayne Santistevan removed it to this Court. (*See* Doc. 1.) Chavez brings

claims against the NMCD; the State of New Mexico; GEO Group; LCCF; New Mexico Secretary of Corrections Alisha Tafoya-Lucero; Former LCCF Warden John Smith; Warden Santistevan; Officer Mendoza; Officer Fuentes; Officer Martinez; and unnamed John Doe officers. (*Id.* at 1.) The Court performed an initial review of the Complaint under 28 U.S.C. § 1915A and construed the Complaint as bringing state tort claims under the New Mexico Tort Claims Act (NMTCA) and a federal claim for cruel and unusual punishment under 42 U.S.C. § 1983 and the Eighth Amendment. (Doc. 8 at 1.)

The Court found that the following claims survived screening: (1) all state and federal claims against Mendoza, Fuentes, and Martinez, the CERT officers named in the Complaint (*id.* at 2); (2) the state tort claims against LCCF, GEO Group, and Wardens Smith and Santistevan (*id.*); and (3) the tort claims involving allegations of sexual assault against the NMCD, the State of New Mexico, and Secretary of Corrections Tafoya-Lucero (*id.* at 2–3). The Court found that the Complaint did not plausibly allege any § 1983 claims against the non-officer defendants. (*Id.* at 3.) The Court dismissed any § 1983 claims as to NMCD, the State of New Mexico, Secretary of Corrections Tafoya-Lucero, GEO Group, LCCF, Smith, and Santistevan, and granted Chavez leave to amend to add necessary allegations. (*Id.* at 3–4.) A month after the Court entered its screening order, Chavez retained counsel. (*See* Doc. 11.) Still, Chavez failed to file an amended complaint, and the Court entered an order dismissing with prejudice all federal claims against the non-officer defendants. (*See* Doc. 13.)

On November 30, 2021, the Court entered an Order to Show Cause and noted that four defendants—the State of New Mexico, LCCF, Fuentes, and Smith—had not responded to the Complaint. (Doc. 23.) The Court directed Chavez to effectuate service on these four defendants or show cause why they should not be dismissed. (*Id.* at 2.) Chavez failed to serve the defendants or

5

respond to the Order to Show Cause, and the Court dismissed without prejudice all claims against the State of New Mexico, LCCF, Fuentes, and Smith. (*See* Doc. 24.)

Pending before the Court are three motions. Defendants NMCD and Secretary of Corrections Tafoya-Lucero move to dismiss the state claims brought against them on the basis that the state has not waived sovereign immunity for Chavez's claims. (*See* Doc. 20.) All Defendants jointly move for summary judgment on all Chavez's claims on the basis that Chavez failed to exhaust his administrative remedies. (*See* Doc. 43.) Chavez also moves for summary judgment. (Doc. 53.) Chavez's attorney withdrew shortly after Defendants filed their motion for summary judgment. (Doc. 46.)

Because the Court agrees that Chavez failed to exhaust his administrative remedies, it will grant Defendants' motion for summary judgment and deny the remaining motions as moot.

## II.     Legal Standards and Evidentiary Rulings

### A.     Summary Judgment Standard

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Halley v. Huckaby*, 902 F.3d 1136, 1143 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1347 (2019) (citing *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018)). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party. *Id*. "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" *Tanner v. San Juan Cnty. Sheriff's Off.*, 864 F. Supp. 2d 1090, 1106 (D.N.M. 2012) (quoting *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)) (citing *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986)). "Once the movant meets this burden, rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial." *Id*. (citing *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256). A party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Id*. at 1107 (quotation and citation omitted). Instead, the non-moving party must come forward with "sufficient evidence on which the factfinder could reasonably find" in their favor. *Id*. (citations omitted). Evidence that is "merely colorable," *Anderson*, 477 U.S. at 249, or consists only of "[u]nsubstantiated allegations[,]" *McCoy*, 887 F.3d at 1044, is insufficient.

### B. Relevant Local Rules

Pursuant to Local Rule 56, the party moving for summary judgment "must set out a concise statement of all of the material facts as to which the movant contends no genuine issue exists." D.N.M. LR-Civ. 56(b). The movant must number the facts "and must refer with particularity to those portions of the record upon which the movant relies." *Id.* In return, the non-moving party must also provide "a concise statement of the material facts . . . as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed." *Id.* "All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted." *Id.*

### C. Evidentiary Rulings

Defendants provide a statement of Undisputed Material Facts. (*See* Doc. 43 at 4–7.) Chavez fails to specifically respond to Defendants' facts. (*See* Doc. 51.) Chavez provides his own unnumbered factual assertions, most of which are not supported by record evidence. (*See* Docs. 51; 53.) Chavez submits three records in this matter: (1) his sworn complaint, which "may be

7

treated as an affidavit," *Hayes v. Harriott*, 70 F.3d 1144, 1148 (10th Cir. 1995) (citation omitted); (2) an undated, handwritten statement on an NMCD "Inmate Sworn Statement" form asserting that Unit Manager "Hope Salazar has violated the Law and policy by not" providing a phone to report PREA violations (*see* Docs. 51 at 16; 53 at 14); and (3) a two-paragraph affidavit dated June 2, 2022, in which he reiterates that he was sexually assaulted on June 28, 2018, by the named officers, that he submitted "many" grievances about the sexual assault and a PREA call, and that he has been retaliated against because of his report (*see* Docs. 51 at 18; 53 at 16). In response, Defendants submit the Declaration of Dominick Gonzales, who has personal knowledge of the events of June 28. (Doc. 59-1.) Gonzales confirms that Chavez was restrained and that his gray sweatpants fell down while he was walked out of the cell, but Chavez's boxer shorts remained up and covered him. (*Id.* ¶¶ 5–8.) Defendants also submit video of the incident, which does not show a sexual assault or an inappropriate exposure of Chavez. (*See* video referenced in Doc. 59-2.)

After considering the parties' submissions, the Court finds that Chavez's assertions of sexual assault and discarded grievances are blatantly contradicted by the record. Not only is there record evidence showing that Chavez submitted two Informal Complaints without mentioning excessive force or sexual assault, but he also confirmed to investigators that the CERT officers did *not* hurt him. (*See* Docs. 43-1-B at 6; 43-2-A.) He also stated to investigators that his boxers fell down around his ankles, and the officers refused to let him pull them up. (Doc. 43-1-B at 6.) As the video evidence shows that Chavez's story of sexual assault is not supported, the Court will not adopt his version of the facts in ruling on the motion for summary judgment. *See Scott v. Harris*, 550 U.S. 372, 379 (2007). Chavez fails to create a genuine dispute of fact on Defendants' factual assertions, and the Court deems Defendants' facts undisputed.

**III.    Analysis**

    **A.    Martinez was not personally involved in the incident.**

Defendants assert that Defendant Martinez did not participate in the shakedown of Chavez's cell on June 28. (Docs. 43 at 12; 43-1 ¶ 6.) They ask the Court to dismiss him as a party. (Doc. 43 at 12.) Chavez offers no evidence to dispute this assertion. Because "liability 'under § 1983 must be based on personal involvement in the alleged constitutional violation" and there is no evidence that Martinez participated in the shakedown, the Court agrees that Martinez should be dismissed from this lawsuit. *See Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) (citation omitted).

    **B.    Defendants have established that Chavez failed to exhaust his administrative remedies.**

Defendants assert that Chavez's remaining federal claim must be dismissed because he failed to exhaust his administrative remedies. (Doc. 43 at 9.) The Prison Litigation Reform Act (PLRA) "requires prisoners to exhaust prison grievance procedures before filing suit." *Jones v. Bock*, 549 U.S. 199, 202 (2007) (citing 28 U.S.C. § 1915A; 42 U.S.C § 1997e(a)). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Defendants have established that Chavez filed two Informal Complaints about the June 28 incident, but neither involved excessive force or sexual assault and neither were timely. (Doc. 43-2-C.) Moreover, Chavez wholly failed to file a Formal Grievance on the June 28 incident. (*See* Doc. 43-2 ¶ 12.)

The untimely PREA Complaint submitted on Chavez's behalf almost a year after the incident does not save his claims. Defendants assert, and Chavez fails to dispute, that "PREA

9

Complaints do not satisfy the administrative grievance requirements on exhaustion of administrative remedies under the PLRA." (Doc. 43 at 9 (citing, *e.g.*, *Clay v. Esparza*, No. 20-3220-SAC, 2020 WL 6117856, at *4 (D. Kan. Oct. 16, 2020)); *see also* Doc. 51.) Because it is undisputed that Chavez failed to exhaust his administrative remedies on the incident at issue in his Complaint, the Court will grant Defendants' motion and dismiss his remaining federal claim.

Defendants assert that Chavez's state law claims suffer the same fate under N.M. Stat. Ann. § 33-2-11(B). (*See* Doc. 43 at 10.) This section provides that "[n]o court of this state shall acquire subject-matter jurisdiction over any complaint . . . filed by any inmate of the corrections department . . . that is substantially related to the inmate's incarceration . . . until the inmate exhausts the corrections department's internal grievance procedure." § 33-2-11(B). Defendants assert that § 33-2-11(B) precludes the Court from exercising subject matter jurisdiction over Chavez's state law claims. (Doc. 43 at 10.) GEO Group made the same argument in another case in this district. *See Clements v. GEO Grp., Inc.*, No. CIV 15-1017 MV/KBM, 2017 WL 3207156, at *7 (D.N.M. July 27, 2017), *R&R adopted*, 2017 WL 4443454 (Oct. 3, 2017). There, the court dismissed the state law claims as unexhausted, opining that "[g]iven the lack of established state law interpreting § 33-2-11(B), New Mexico courts would look to the federal law, here cases interpreting the PLRA, as persuasive." *Id.* The Court agrees with this result and will dismiss Chavez's state law claims for failure to exhaust.

Finally, Defendants ask the Court to dismiss Chavez's claims with prejudice. (Doc. 43 at 11.) Normally the Court dismisses a Complaint for failure to exhaust without prejudice, "because '[f]ailure to exhaust administrative remedies is often a temporary, curable, procedural flaw.'" *Kikumura v. Osagie*, 461 F.3d 1269, 1290 (10th Cir. 2006), *overruling recognized on other grounds by Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) (quoting *Steele v. Fed. Bureau*

10

*of Prisons*, 355 F.3d 1204, 1212–13 (10th Cir. 2003)). The Tenth Circuit has recognized, though, that "[o]nce a prison formally denies an inmate's grievance for untimeliness, and either the inmate does not challenge the basis for that decision or the court upholds the decision, the inmate's failure to exhaust is no longer 'a temporary, curable, procedural flaw.'" *Id.* "Such a claim should be dismissed with prejudice." *Id.* Here, Chavez's Informal Complaints were denied on the basis of untimeliness, and Chavez is no longer able to cure any procedural flaw on those complaints. The PREA Complaint was dismissed as unfounded—not as untimely. Yet there is no evidence that Chavez exhausted his administrative remedies on that Complaint either. There being no procedural flaw to cure as the time to exhaust has long since passed, the Court agrees that a dismissal with prejudice is appropriate.

**THEREFORE,**

**IT IS ORDERED** that Chavez's Motion for Summary Judgment (Doc. 53) is **DENIED** and Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Doc. 20) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Chavez's federal and state claims against all remaining defendants are **DISMISSED WITH PREJUDICE**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE